UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DELANO JACKSON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:21-CV-455-JPK |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of ) | |
| Social Security, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 14]. Plaintiff Delano Jackson requests that the December 23, 2020 decision of the Administrative Law Judge (ALJ) denying his claim for disability benefits be reversed. For the following reasons, the Court grants Plaintiff's request and remands the case for further proceedings.

**PROCEDURAL BACKGROUND**

On November 6, 2019, Plaintiff applied for disability benefits and supplemental security income, alleging disability beginning September 26, 2019. Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on December 4, 2020. On December 23, 2020, the ALJ issued an unfavorable decision, making the following findings[1]:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

    2.    The claimant has not engaged in substantial gainful activity since September 26, 2019, the alleged onset date.

    3.    The claimant has the following "severe" impairments: Achilles tendinitis.

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. [T]he claimant has the residual functional capacity to lift and/or carry and push and/or pull 50 pounds occasionally and 25 pounds frequently. Stand and/or walk for about 6 hours in an 8-hour work day and sit for about 6 hours in an 8-hour work day. Never climb ladders, ropes or scaffolds. Occasionally climb ramps and stairs. Occasionally balance, stoop, kneel, crouch and crawl. Must wear a CAM boot.

6. The claimant is unable to perform any past relevant work.

7. The claimant was [. . .] 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 26, 2019, through the date of this decision.

(AR 18-26)[2].

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate the analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for benefits, a claimant must establish that he suffers from a "disability," defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.

3

§ 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff worked in housekeeping at Indiana University from 2005 until 2019, when he quit because of an injury to his left foot (AR 42-44). He has had three surgeries on his foot, most recently in 2002 (*see* AR 283), which left ongoing scar tissue, "wear and tear," swelling, and pain. (*See* AR 50-51). The administrative record contains a series of notes from Plaintiff's podiatrist, Matthew Dinnon, indicating at various times in 2019 and 2020 that Plaintiff should be restricted to "sitting duty" at work. However, the ALJ found that Plaintiff could work at the medium

4

exertional level, walking as much as six hours a day, based in part on the opinions of the state agency consultants. (AR 20, 23).

Plaintiff argues that the ALJ did not provide a logical explanation for rejecting the opinions of Dr. Dinnon, or finding that Plaintiff could perform medium work, and that the ALJ did not properly analyze his work history. For the reasons described below, the Court agrees, and remands the case for further proceedings.

**I.        Medical Opinions**

For claims filed after March 27, 2017, as Plaintiff's was, the regulations no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Therefore, the so-called "treating physician rule" – which gave special deference to a claimant's own doctor unless the ALJ provided a "good reason" – no longer applies. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). Nonetheless, the ALJ must still provide a written explanation for her conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion. *See Giza v. Kijakazi*, No. 2:20-CV-00263-SLC, 2021 WL 4551387, at *5 (N.D. Ind. Oct. 5, 2021); *Inman v. Saul*, No. 1:20-CV-231-DRL, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021); *Tammy M. v. Saul*, No. 2:20-CV-285-WCL, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021).

Moreover, the ALJ must still weigh the same factors in considering medical opinion evidence: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length and purpose of the relationship; (4) specialization; and (5) any other factors that would "tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c, 416.920c. The "most important factors" are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The ALJ is not required to explain how the other factors were considered, but can address them as appropriate. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In this case, the treatment notes include a series of FMLA forms and patient instructions from Dr. Dinnon, indicating that Plaintiff would be unable to work or was restricted to "sitting work" for a certain period. Some of the notes were written before the alleged disability onset date of September 26, 2019, and the ALJ found these "neither valuable nor persuasive." (AR 23). However, the ALJ addressed four notes pertaining to the period after September 26, 2019:

- On September 27, 2019[3], Dr. Dinnon examined Plaintiff and found him "ambulating with no assistive devices," but found swelling in his left foot, with tenderness of the Achilles tendon. Dr. Dinnon reported:

    > I reviewed his MRI results which shown previous flexor tendon transfer. There is no full thickness tear. Clinically he has chronic pain, swelling, and lack of function of the left Achilles tendon. He is unable to stand and walk more than 10-15 minutes per hour and needs to elevate periodically due to the swelling. He has tried PT, bracing, activity modification without relief. I do not think he would benefit from any surgical intervention at this time. It is unlikely that he is able to perform any standing or walking type work in the future due to the chronic nature of this problem.

    (AR 362). The ALJ found this opinion "inconsistent with his examination that found . . . intact sensation was intact, a negative Thompson's test[4], and the claimant was ambulating without an assistive device." (AR 24).

- On December 20, 2019, Dr. Dinnon examined Plaintiff one day after he was sent home from work and found him "[a]mbulating with fixed walking boot." He found

---

[3] The specific dates of Dr. Dinnon's examinations and recommendations are somewhat unclear, with some notes containing multiple different dates (*see*, *e.g.*, AR 409-410). For ease of reference, and because no party challenges the ALJ's findings as to the specific dates, the Court uses the dates discussed by the ALJ.

[4] The "Thompson's test," also called the Simmonds-Thompson test, assesses whether the Achilles tendon is currently torn or ruptured. *See* Douglas, J., et al., *Clarification of the Simmonds–Thompson test for rupture of an Achilles tendon*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2689757/ (last visited September 28, 2022).

    swelling in Plaintiff's left foot, with tenderness of the Achilles. Dr. Dinnon instructed that Plaintiff "[m]ust ambulate with fixed walking boot for the next six weeks, sitting duty only with left foot elevated at all times or off work for the next six weeks." (AR 409-10). The ALJ noted that this was only a temporary restriction and that Plaintiff had worked the day before without a walking boot.[5] The ALJ did not comment on this opinion's persuasiveness, but noted that despite tenderness and swelling, Plaintiff had "normal sensation, normal right extremity, and a negative Thompson's test." (AR 24).

- On January 17, 2020, in notes from a follow-up appointment, Dr. Dinnon found Plaintiff "[a]mbulating with fixed walking boot," again with swelling and tenderness. Dr. Dinnon instructed: "Must ambulate with fixed walking boot, sitting duty only with left foot elevated at all times or off work until evaluated by Dr. Porter[6]." (AR 408). The ALJ again noted that this was only a temporary restriction and that despite tenderness and swelling, Plaintiff had normal sensation and a negative Thompson's test. (AR 24).

- On June 26, 2020, Dr. Dinnon noted tenderness, swelling, and "[p]ain with heel rise." Plaintiff walked without an assistive device, but had a "[s]lightly slow gait with mild limp." Dr. Dinnon instructed: "Sitting duty only with left foot elevated at all times and limit standing and walking to 5-10 minutes an hour." (AR 405). The ALJ highlighted that Plaintiff's (non-injured) right foot was normal, there was no assistive device, and his Thompson's test was negative. (AR 24).

---

[5] The notes said Plaintiff was "sent home from work and returned to [the] walking boot," implying that he was feeling pain on the job and that was why he had resumed wearing the boot. (*See* AR 409).

[6] Plaintiff received an orthopedic evaluation from Dr. David Porter on April 13, 2020 (AR 468-69).

7

Collectively, the ALJ concluded as follows about these four notes:

> While some limitations are supported by the record, the various limitations from Dr. Dinnon are not fully supported by his own examinations and the longitudinal record. Physical examinations by Dr. Dinnon were generally normal except for some tenderness and swelling to his left Achilles tendon. Dr. Dinnon did not indicate whether that swelling was mild, moderate or severe. However, Dr. Inabnit and Nurse Practitioner Hadzimesic noted there was no edema and Dr. Porter observed mild swelling. On a few occasions the claimant demonstrated a mild limp, otherwise he ambulated normally without an assistive device. The claimant also used a CAM boot to ambulate some times. While the claimant had some decreased range of motion in his left foot/ankle, his strength and sensation were generally intact. Taking into consideration the claimant's subjective reports of pain and tenderness and balancing them with the objective findings, some postural limitations and the use of CAM boot is support[ed]. For these reasons, the undersigned finds these opinions in the treatment record of Dr. Dinnon to be somewhat persuasive. However, the severe restriction of 10-15 minutes of walking an hour and foot elevation at all times is not supported by the record and is unpersuasive.

(AR 24-25).

Although the ALJ attempted the required supportability and consistency analysis, by comparing Dr. Dinnon's opinions to his own treatment notes and the rest of the medical record, the ALJ did not provide a logical bridge to the conclusion that the doctor's opinions were inconsistent with the record. The ALJ identified several purportedly inconsistent facts: examples of normal gait, normal sensation, negative Thompson's test, no edema, the possibility that the swelling may have been mild, and the fact that his other foot was normal. But Dr. Dinnon never contradicted those findings. He advised that Plaintiff should walk for only for a few minutes at a time, because of the pain that walking causes him, so he should only work "sitting duty." *See* (AR 405, 408-410); *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The ALJ overstated findings from three diagnostic tests to discredit Gerstner's complaints . . . [Gerstner never claimed] that her condition totally impaired the abilities tested in these exams. Instead, she said that her pain was triggered by prolonged . . . activity and stress."); *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir.

8

2015) ("[The ALJ] didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps."); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Dr. Mayer noted that Murphy's gait and tandem gait had returned to normal, but that description is not informative as to whether Murphy could perform light work.").

The ALJ gave no explanation for why this grab bag of normal findings contradicts the doctor's recommendations. As the doctor's notes acknowledge, Plaintiff can walk for short periods of time. But the doctor explained: "Clinically he has chronic pain, swelling, and lack of function of the left Achilles tendon. He is unable to stand and walk more than 10-15 minutes per hour and needs to elevate periodically due to the swelling." (AR 362). Therefore, the doctor concluded, "it is unlikely that he is able to perform any standing or walking type work in the future due to the chronic nature of this problem." (*Id.*). Because the conclusions about Plaintiff's walking ability are vital to the question of whether he is disabled, this error requires remand. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(d) (a claimant aged 55 or older limited to sedentary work, with no transferrable skills, is found disabled except in "rare situation[s]").

**II.     Walking Restriction**

The rest of the decision does not demonstrate substantial evidence that Plaintiff could "stand and/or walk for about 6 hours in an 8-hour workday." (AR 20). The ALJ relied on the opinions of the state agency consultants (AR 61-74, 77-92) that Plaintiff could work at the medium exertional level. The ALJ noted that these opinions were "within the purview of their expertise" and consistent with the record, citing the same kinds of normal findings described above. (AR 23). Like the ALJ, the agency doctors did not explain how they concluded that Plaintiff could walk for six hours in a workday based on these findings.[7]

---

[7] In the section of the form asking the consultants to "explain" the basis for the exertional limitations, both consultants referred only to the exam with Dr. Dinnon on September 27, 2019. They stated (incorrectly, based on the notes

9

The ALJ also discussed a consultative examination by Dr. Ralph Inabnit from July 2019 (AR 351-56), before the alleged onset date. Plaintiff claimed he could walk a half-mile, but remained in chronic pain, including pain that was 9 out of 10 on the examination date. (AR 351). Dr. Inabnit concluded that Plaintiff has "evidence of" a previously torn Achilles, with scar tissue, and chronic pain syndrome, but made no treatment suggestions. (*See* AR 356 ("Not much can be done.")). The ALJ noted that at that time, Plaintiff was "working full time[,] . . . had not seen an orthopedic doctor and was not scheduled to see a doctor regarding his chronic pain." (AR 21 citing AR 351). The ALJ also noted the examiner's normal findings of generally normal strength, sensation, and "casual walk." (AR 21). But the fact that Plaintiff was working, and in pain, two months prior to the disability onset date was consistent with his own allegations, and nothing in the examiner's report contradicts the medical notes from after the onset date.

Finally, the ALJ noted that Plaintiff had not been prescribed a cane, walker, or wheelchair, had not been to the hospital or the emergency room for his foot, and that "treatment has been conservative." (AR 23). But two of the three doctors who examined Plaintiff around or after the onset date suggested that no aggressive treatment would have helped him. (*See* AR 356 (Dr. Inabnit: "Not much can be done"), 362 (Dr. Dinnon: "He has tried PT, bracing, activity modification without relief. I do not think he would benefit from any surgical intervention at this time.")). The third doctor, Dr. Porter, concluded that "it is hard to say what is going on" or how to treat it, and his only treatment recommendation was Gabapentin (AR 469), which Plaintiff tried and could not tolerate due to the side effects (AR 448). The ALJ's negative inference from Plaintiff's "conservative treatment" was not proper without an explanation of "the significance of

---

provided in the record, *see* AR 362) that there was no swelling on Plaintiff's ankle, and that Plaintiff had normal reflexes and sensation, casual gait, and did not use an assistive device in the appointment. The doctors did state that Plaintiff "clinically has pain," but did not otherwise explain how that factored into their conclusion that Plaintiff could walk for long periods. (*See* AR 65, 82).

10

'conservative treatment', or why more aggressive treatment was appropriate." *Robert P. v. Kijakazi*, No. 3:21-CV-305, 2022 WL 831870, at *10 (N.D. Ind. Mar. 21, 2022); *Hollihan v. Colvin*, No. 2:14-CV-474-PRC, 2016 WL 750670, at *5 (N.D. Ind. Feb. 26, 2016) ("If the ALJ determines that the treatment was conservative, he shall discuss and support why more aggressive treatment would have been medically appropriate.") (citing *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009)); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *9-10 (relevant factors include whether "[a] medical source may have advised the individual that there is no further effective treatment to prescribe or recommend").

### III.     Work History

Although the case is remanded on other grounds, the Court briefly addresses the ALJ's treatment of Plaintiff's work history. Although an ALJ is not statutorily required to consider a claimant's work history, "a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). "But work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).

Plaintiff's earnings record showed that he had done some work at least every year since 2005. (AR 202). He also testified: "every time I work, I work a year. And then I got to be off another year to try to get it straightened out again with the [Achilles] problem." (AR 44-45). The ALJ inferred a contradiction: "Although[] the claimant testified he would work a year and then have to stop working to take care of his foot, his earnings records show his income consistently increased between 2005 and 2017 and only slightly decreased in 2018 and 2019." (AR 22).

The ALJ misread or misinterpreted the earnings records. While Plaintiff's annual income increased between 2005 and 2007, it was essentially consistent between 2008 and 2017. He earned

roughly $2,700 more in 2017 than he did in 2008, but that seems to have been an aberration, rather than a consistent upward trend. (*See* AR 202). These numbers do not clearly contradict Plaintiff's testimony that he worked for a year and then took a year off: if he left work near the middle of each calendar year, his earnings from one calendar year to the next might be relatively consistent.

The specifics of Plaintiff's work history are ambiguous, and the Court does not necessarily find that Plaintiff's work record entitles him to "substantial credibility." *Hill*, 807 F.3d at 868. However, on remand, in addition to any negative inference, the ALJ should also consider whether a positive inference could be drawn: that Plaintiff kept trying to work even though he may have been in substantial pain. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) ("a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms").

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 14] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 28th day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT